FILLIPON v. ALBION VEIN SLATE CO.

(Circuit Court of Appeals, Third Circuit.  May 17, 1917.)

No. 2223.

APPEAL AND ERROR ☞1069(3)—HARMLESS ERROR—COMMUNICATIONS WITH JURY.

That, in a civil case, a written question from the jury, as to a point of law, was presented to the judge, and answered by him in writing after he had retired to his chamber, and not in open court, or in the presence of the parties or their counsel, was not ground for reversal, where no harm resulted, the question and answer were preserved of record, and counsel were promptly informed of what had taken place, and given an opportunity to except to the substance of the instruction and the manner of giving it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4139.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles B. Witmer, Judge.

Action by Donato Fillipon against the Albion Vein Slate Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Calvin F. Smith and Smith, Paff & Laub, all of Easton, Pa., for plaintiff in error.

Frank P. Prichard, James Wilson Bayard, and John G. Johnson, all of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge.  The plaintiff, an adult subject of the king of Italy, suffered injury while at work in the slate quarry of the defendant, a Pennsylvania corporation.  He was a rubbish hand, or ordinary laborer, and this had been his occupation for more than a year.  The defendant's quarry was operated by gangs, each gang comprising four block men and (at the time of the accident) one rubbish hand.  The quarry is an open hole, from which the rough blocks of slate are hoisted to the top of the ground by ropes or chains. After a block has been blasted out, it is tilted up by crowbars, and by wedges of iron or wood, so that the hoisting tackle may be fastened around it.  Under small blocks the wedges are placed by the hand, which need not go farther in than the edge of the block; under large blocks, the wedges are pushed part of the way by the hand, and then a stick of some kind is used to push the wedge farther in, the workman being thus protected from injury in case the stone should slip or make some other unexpected movement.  A rubbish hand is a general utility man, and is expected to do whatever the foreman of the gang may direct.  The plaintiff's experience had made him familiar with the work just described.  His account of the accident was as follows: On July 31, 1914, a large block, several feet both in length

and in breadth, had been blasted out, and chains were about to be put around it. He was helping, and had inserted a wedge as far as possible without putting his hand under the stone. But the wedge had to go farther, and he was afraid to use his hand for that purpose, telling the foreman that he wanted to get something to push the wedge. Instead of consenting, the foreman ordered him to "Go ahead! Go ahead!" and he thereupon put his right arm under; the result being that the arm was so badly crushed by the sudden movement of the block that amputation was necessary. The court asked the jury to decide whether the company had been negligent, and whether, in view of the plaintiff's testimony that he was merely obeying the foreman, his obedience was excusable—in other words, whether he fully understood the danger and acted with reasonable care.

The plaintiff took no exception to the charge, the jury retired, and the court adjourned for the noon recess. After the recess the court-room in which the trial had been held was occupied by another judge and another case, and Judge Witmer retired to his chamber. While the other case was proceeding, the jury sent a written question to Judge Witmer concerning the applicable rule of contributory negligence, and the judge returned a written answer. The question and answer were both preserved on the record, and the plaintiff was afterwards allowed an exception to the instruction thus given, and also to the manner of giving it. The manner was objected to, on the ground that the question was asked and answered in the method described, not in open court, in the absence of the parties and their counsel, and without their knowledge or consent. The verdict was for the defendant.

We need not discuss the question and answer themselves; they contain nothing of which the plaintiff can properly complain, the answer being slightly more in his favor than the charge itself. The point chiefly insisted on now is the alleged error in failing to give the instruction in open court. Upon this subject the federal courts have not yet passed, as far as we know, but numerous cases have arisen in the state courts, and have resulted in two divergent lines of decision. The authorities are collected in a note to North Dakota v. Murphy, 17 L. R. A. (N. S.) 609 (1909), and we see no need to add a prolonged discussion to the 50 or more opinions already in the books. Numerically, the opposing cases are fairly equal, and in weight of argument also there is little to choose between them. The decisions that follow the earliest report—Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185—lay down the unbending rule that no communication should take place between a judge and the jury, except in open court and (if practicable) in the presence of counsel; and some of them hold that communications of only slight importance will furnish ground for reversal, if they have been made in a different place and a different way. The other line of authorities accepts the rule as highly desirable, but not as unbending, holding that the circumstances of each case should be carefully scrutinized, in order to be sure that no harm has actually been done, and that no harm is likely to be done, by the kind of com-

munication that may be under examination in a given case. In our opinion this is the better view, and we give it our approval, confining the decision to the situation now before us, namely, an ordinary civil (not criminal) case, where the jury has asked a plain question in writing concerning a matter of law, not a matter of fact, and where the judge has answered it in writing plainly and accurately, and nothing else has occurred—the question and answer, moreover, having been preserved of record, and counsel having been promptly informed of what has taken place, and having been given the opportunity of excepting to the substance of the instruction and to the manner of giving it. In the case in hand we think it plain that no harm was actually done, and it is not easy to see how harm is likely to happen under precisely similar circumstances, where a question of law only is propounded and is accurately answered. We do not say that harm could never happen in the exchange of such a question and answer; the variety and complexity of human affairs are so great that the same act may have a different quality if the atmosphere be different that surrounds it; but, so far as we can see, harm is not probable. We agree fully that modifications of established practice should be allowed with caution, and we see excellent reasons why every step in a trial up to the rendering of the verdict should be taken in open court, and (wherever practicable) in the presence of counsel also. But, after all this has been said, we are still brought to the question: Is there a compelling reason of policy why a trial fairly and accurately conducted must be always set aside, where such an irregularity has crept in, although it has done no actual harm, and is unlikely to do harm?

We do not see our way to answer this question in the affirmative, and must therefore affirm the judgment.