### DODGE v. UNITED STATES.*

(Circuit Court of Appeals, Second Circuit. May 16, 1919.)

No. 212.

1. CRIMINAL LAW &#8660;864 — TRIAL — COMMUNICATION BETWEEN JUDGE AND JURY.
   Any communication from trial court to jury in a criminal case, not made in open court, is improper.
2. CRIMINAL LAW &#8660;1174(1)—HARMLESS ERROR—COMMUNICATION BETWEEN COURT AND JURY.
   Trial court's improper action in privately advising jury that they might convict under a certain count is not reversible error, where no information was given which was not contained in original charge.
3. INDICTMENT AND INFORMATION &#8660;159(2)—SURPLUSAGE—POWER TO STRIKE OUT.
   Trial court's action in striking certain words in a count on motion by government, to which defendant made no objection, constitutes error fatal to a conviction on that count.
4. WAR &#8660;4—ESPIONAGE ACT—INSTRUCTIONS.
   In a prosecution under Espionage Act, instruction regarding defendant's right to freedom of speech, and power of Congress to enact laws abridging such freedom in time of war, held not improper.

&#8660;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 250 U. S. —, 40 Sup. Ct. 10, 64 L. Ed. —.

**5. WAR ⊛4—ESPIONAGE ACT.**

The Espionage Act is constitutional.

**6. CRIMINAL LAW ⊛1159(4) — QUESTIONS REVIEWABLE — CREDIBILITY OF WITNESSES.**

On appeal in a criminal case, the court cannot pass upon the veracity of witnesses.

**7. CRIMINAL LAW ⊛991(2)—EXCESSIVE SENTENCE—EFFECT.**

That the court exceeded its authority by providing that accused's imprisonment should be at hard labor does not invalidate the authorized portion of the sentence.

In Error to the District Court of the United States for the Western District of New York.

William Dodge was convicted of violating the Espionage Act, and he brings error. Judgment on third count affirmed.

Irving M. Weiss, of Buffalo, N. Y. (Eustace Reynolds, of Buffalo, N. Y., of counsel), for plaintiff in error.

Stephen T. Lockwood, U. S. Atty., and John H. O'Day, Asst. U. S. Atty., both of Buffalo, N. Y.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The plaintiff in error, hereinafter called the defendant, comes into this court to reverse a conviction under Espionage Act June 15, 1917, c. 30, 40 Stat. 217, as amended by Act May 16, 1918, c. 75, 40 Stat. 553. The indictment was based upon section 3 of title 1 of the act (Comp. St. 1918, § 10212c) which is found in the margin.[1]

---

[1] "Sec. 3. Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States, or to promote the success of its enemies, or shall willfully make or convey false reports or false statements, or say or do anything except by way of bona fide and not disloyal advice to an investor or investors, with intent to obstruct the sale by the United States of bonds or other securities of the United States, or the making of loans by or to the United States, and whoever, when the United States is at war, shall willfully cause, or attempt to cause, or incite or attempt to incite, insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct or attempt to obstruct the recruiting or enlistment service of the United States, and whoever, when the United States is at war, shall willfully utter, print, write, or publish any disloyal, profane, scurrilous, or abusive language about the form of government of the United States, or the Constitution of the United States, or the military or naval forces of the United States, or the flag of the United States, or the uniform of the Army or Navy of the United States, or any language intended to bring the form of government of the United States, or the Constitution of the United States, or the military or naval forces of the United States, or the flag of the United States, or the uniform of the Army or Navy of the United States, into contempt, scorn, contumely, or disrepute, or shall willfully utter, print, write, or publish any language intended to incite, provoke, or encourage resistance to the United States, or to promote the cause of its enemies, or shall willfully display the flag of any foreign enemy, or shall willfully by utterance, writing, printing, publication, or language spoken, urge, incite, or advocate any curtailment of production in this country of anything or things, product or products, neces-

The indictment contains four counts. The first count in substance states that the defendant on June 22, 1918, at Buffalo, while the United States was at war with Germany and Austria-Hungary—

"* * * did then and there knowingly, wrongfully unlawfully, feloniously, and willfully utter and publish language intended to incite, provoke, and encourage resistance to the United States and promote the 'cause of its enemies,' by appearing upon the public streets in the presence and within the hearing of a large crowd of men forming part of the military forces of the United States, and capable of bearing arms, and, with the intent that they should hear, did then and there give utterance to words in substance to the effect that the United States should not be at war; that on July 3, 1918, there would be a meeting at the corner of Spring and Genesee streets, behind closed doors, at which things would be told about the war, and that his hearers were all invited to attend, and by inflection, tone of voice, and innuendo he, the said William Dodge, did then and there convey to his hearers the impression that things would be disclosed at said meeting about the present war that would bring the form of the government of the United States and the military and naval forces of the United States into contempt, scorn, contumely, and disrepute; and he, the said William Dodge, did furthermore then and there willfully utter, publish, and proclaim to the aforesaid crowd of men words and language in substance as follows:

"'Let us organize and follow the leaders, the agitators. Now they call us agitators. What right has the government to call us such now? If there was anything for us to .fight for, we would do so, every one of us: but what are we fighting for? Nothing to our advantage; nothing for our good; nothing for our benefit. This war is not worth fighting for.'

"And at the same time and place the said William Dodge did enter into an argument with one of the audience, who stated that he was enlisted in the army of the United States, and the said William Dodge did then and there by word of mouth publicly heap scorn and contumely upon the said person. because of his enlistment in the said army."

The second count states that—

"at the same time and place and by the same means the defendant did knowingly, wrongfully, unlawfully, feloniously. and willfully attempt to cause and incite insubordination, disloyalty, and refusal of duty in the military and naval forces of the United States."

The third count states that—

"at the same time and place, and in the same manner and by the same means as set forth in the two previous counts, the defendant did * * * knowingly, wrongfully, unlawfully, feloniously, and willfully attempt to obstruct. the recruiting and enlistment service of the United States."

The fourth count states—

"the manner and means of alleged violation, and charges that under the same circumstances and at the same time and place the defendant did in the same way by word and act oppose the cause of the United States in the aforesaid war."

---

sary or essential to the prosecution of the war in which the United States may be engaged, with intent by such curtailment to cripple or hinder the United States in the prosecution of the war, and whoever shall advocate, teach, defend, or suggest the doing of any of the acts or things in this section enumerated, and whoever. shall by word or act support or favor the cause of any country with which the United States is at war or by word or act oppose the cause of the United States therein, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

The defendant pleaded not guilty. After a trial which lasted for several days, the jury rendered a verdict acquitting him on the second and fourth counts, and convicting him on the first and third counts. The defendant was sentenced to be imprisoned in the Maryland state penitentiary at Baltimore, Md., at hard labor for a term of six years.

The defendant's father was born in England and his mother in France. He himself was born in Buffalo, and he is a member of the Socialist Labor Party and of the Workers International Industrial Union, which prior to 1915 had been called the I. W. W.

[1, 2] It appears that while the jury was deliberating on its verdict the bailiff in charge brought to the judge a communication from it. Upon its receipt he summoned the counsel for both sides to his chambers and informed them that he had received a communication from the jury, but that he did not think he should disclose its substance at that time. Thereupon counsel withdrew and the judge returned an answer to the jury's communication by the bailiff in charge. After the verdict was received the judge informed counsel that what the jury had asked was whether defendant could be convicted on the first count, and that he replied, "Yes;" and he stated that he had not at the time apprised counsel of the contents of the note, or of the reply, as it did not seem to him to be of enough importance, especially as he had in his instructions informed them that the defendant could be found guilty of one or all counts, or none at all; and it has been assigned as error that the court communicated with and instructed the jury, not in open court, and not in the presence and without the knowledge and consent of the defendant or his counsel, after the jury had retired to deliberate on their verdict.

It has been held in a few cases that after a jury has retired the court may give an instruction on a question of law in the absence of counsel. Bassett v. Salisbury Mfg. Co., 28 N. H. 438; Milton School District No. 1 v. Bragdon, 23 N. H. 507; Shapley v. White, 6 N. H. 172; Goldsmith v. Solomons, 2 Strob. (S. C.) 296, 300. In the case last cited the court said:

"The intercourse between the jury and the bench is, in many respects, very confidential. Often the communications from the jury are of that kind which ought not be communicated to the bar."

These cases are contrary to the clear weight of authority. In 38 Cyc. 1859, it is said:

"It is almost universally held that no communication ought to take place between the judge and the jury after the cause has been committed to them by the charge of the judge, unless in open court."

That is undoubtedly the law. The leading case on this subject is Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185, which was decided by the Supreme Court of Massachusetts in 1823. In that case, after a jury had been out for six hours, the foreman wrote to the judge, at his chambers, that they could not agree and that they waited for his directions. The judge replied in writing, saying that he was unwilling to permit them to separate, and gave such directions as would enable them to reconsider the cause in a more systematic man-

ner. And he directed the jury to bring his letter into court with them in order that it might be filed with the papers in the case. A new trial was ordered. The opinion was written by Chief Justice Parker, who said:

"As it is impossible, we think, to complain of the substance of the communication, the only question is whether any communication at all is proper, and, if it was not, the party against whom the verdict was is entitled to a new trial. And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in the presence of the counsel in the cause."

The courts are practically unanimous in holding that private communications between court and jury are improper, and that all communications should be made in public. They are not, however, unanimous in holding that a private communication between judge and jury will in any case in which it occurs nullify the verdict. In Moseley v. Washburn, 165 Mass. 417, 43 N. E. 182, the judge answered a written question from the jury as to the date from which to compute interest; it having been covered in the original instruction. This was held not to require reversal. In Whitney v. Commonwealth, 190 Mass. 531, 77 N. E. 516 (1906), a civil case, the judge communicated with the jury privately, the communication being a collateral direction as to the manner of using the papers supplied for the reception of a verdict, and the court held that this did not require the verdict to be set aside. The court said in the Whitney Case:

"There are grave objections to any communication with a jury made as this was. * * * But the facts stated in this case make it certain that no miscarriage of justice has resulted."

In Buntin v. Danville, 93 Va. 200, 24 S. E. 830, the judge answered a question of the jury, both question and answer being in writing, without informing counsel, who were in court engaged in another case. The court declined on that account to reverse, and declared that, while the better practice is to inform the counsel of any question asked by the jury, the irregularity would not vitiate the verdict, as the answer correctly stated the law and the verdict was plainly right. In People v. Kelly, 94 N. Y. 526, the judge answered a written communication from the jury. It did not appear what the communication was. The court held that the question was not properly raised by affidavit, and implied that the harmful nature of such communication should be shown, saying that the presumption is that there was no violation of duty on the part of the court.

The only case in the federal courts which has come to our attention is Fillipon v. Albion Vein Slate Co., 242 Fed. 258, 155 C. C. A. 98, decided by the Circuit Court of Appeals in the Third Circuit. The court held that under the circumstances of the case a written communication between the court and the jury, after the jury had retired, is not ground for reversal in a civil case, where no harm results; the question and answer being preserved of record. The question in that case concerned the applicable rule of contributory negligence. The

court found nothing to complain of in the answer, and the only question was whether there ought to be a reversal because the instruction was not given in open court. In its opinion the court said:

"Is there a compelling reason of policy why a trial fairly and accurately conducted must be always set aside, where such an irregularity has crept in, although it has done no actual harm, and is unlikely to do harm? We do not see our way to answer this question in the affirmative, and must therefore affirm the judgment."

And see Grabinsky v. Smit, 20 Mo. App. 50; State v. Nash, 51 S. C. 319, 28 S. E. 946.

In the instant case it is evident that no possible harm resulted or could result from the communication which passed between court and jury. The communication gave the jury no information which was not contained in the original charge. While the judge should not have done what he did, to reverse on that ground would under the circumstances be so extremely technical that it does not at all approve itself to our judgment.

[3] At the close of the case counsel for the government moved to strike out as surplusage a portion of the first paragraph of the first count of the indictment and the word "mutiny" from the first paragraph of the second count. Counsel for defendant at once said: "No objection." The court granted the motion. This is now assigned for error. That it was error of the most serious kind is not to be doubted. The rule is almost universally recognized, both in this country and in England, that an indictment cannot be amended by the court, and that an attempt to do so is fatal to a verdict upon the count.

The Supreme Court in Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849, declared that it was beyond question that in the English courts indictments could not be amended, and that no authority had been cited in the American courts which sustained the right of a court to amend any part of the body of an indictment without reassembling the grand jury, unless by virtue of a statute. In that case the trial court amended the indictment by striking out six words as being surplusage. The Supreme Court held that this deprived the court of power to try the prisoner. There was only one count in the indictment in that case. And the court said:

"The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a nolle prosequi had been entered."

We therefore hold in the instant case that the amendment made in the first two counts deprived the court of power to proceed upon those counts; but this did not affect the right to try the defendant upon the third and fourth counts. As the jury acquitted on the fourth count, the question is as to the validity of the third count. That count is well drawn, and the conviction under that count must be sustained unless the Espionage Act is unconstitutional.

[4-6] It was claimed at the argument that the trial judge gave the impression to the jury that the defendant had no right to freedom of speech while the country was at war, and that Congress in time of war could enact laws in violation of the First Amendment, which pro-

vides that Congress shall make no law abridging freedom of speech. That portion of the charge complained of may be found in the margin.[2]

We see no error in the above instruction, which in effect amounted to what the Supreme Court said in the cases of Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470, Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. 561, and Debs v. United States, 249 U. S. 211, 39 Sup. Ct. 252, 63 L. Ed. 566. The act is constitutional and there is evidence which, if the jury believed it, justified the verdict. The evidence was very conflicting, and Dodge, who took the stand, denied flatly that he had said certain things which others stated he had said. But this court cannot pass upon the veracity of the witnesses, and determine whether Dodge or his accusers told the truth.

[7] It appears that, in sentencing the defendant to imprisonment, the court sentenced him to imprisonment for "hard labor," and that those words are not found in the act for the violation of which the conviction was obtained. But where a court has jurisdiction of the person and the offense the imposition of a sentence in excess of what the law permits does not render the authorized portion of the sentence void, but only the portion of it which is in excess. United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631.

Judgment on third count affirmed.

---

[2] "Another subject has been suggested during the course of this trial, in reference to which I conceive that I should give you instructions. You should understand, gentlemen, that it is a constitutional provision that a person has the right of freedom of speech, and Congress, true enough, has no right to enact laws abridging the freedom of speech; but, gentlemen, this is a much-abused term, and I instruct you that the guaranty cannot be successfully resorted to as a protection in time of war, where things that are said or uttered involve the integrity of the nation, or injure or tend to injure the United States—in other words, a citizen would not be permitted to speak or write in the time of war in a way that would interfere with the successful ending of the war. While citizens may fairly criticize the laws of Congress, and even the acts of the President, or of the army or navy, yet such criticism must be honest and based upon truth, and not with the intent to violate the Sedition Act in question. When the words uttered are accompanied by a willful intent to disobey the statute, and to obstruct the recruiting or enlistment service of the United States, or the purposes that the United States has in engaging in the war, or to induce disloyalty or insubordination, or attempt so to do, then, gentlemen, what was said becomes seditious and an infraction of the statute.

"In this respect, gentlemen, the Sedition Act, as amended in May, 1918, and under which this indictment is found, is very broad and comprehensive, and it will bear reading again. This is an extraordinary measure, limited to times when the United States is at war, and by that I mean to be understood as saying that very likely the things that are claimed to be said, if they were said, would not be a violation of the statute if we were not at war, but being at war, a different situation presents itself, and Congress has met the situation by enacting the statute to which I am now calling your attention."