**CARNEY et al. v. UNITED STATES.**

No. 11001.

Circuit Court of Appeals, Ninth Circuit.

Aug. 22, 1947.

Rehearing Denied Sept. 17, 1947.

Writ of Certiorari Denied Nov. 17, 1947.

See 68 S.Ct. 165.

Morris Lavine, of Los Angeles, Cal., for appellants.

James M. Carter, U. S. Atty., and Ernest A. Tolin, William Strong, and Ray H. Kinnison, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

Jesse Carney and Milton Ramsey were indicted in the district court in two counts charging violation of Section 28 of the Criminal Code, 18 U.S.C.A. § 72. Count one, as the record reaches us,[1] charges that the defendants did "willingly, knowingly, falsely and feloniously make, forge and counterfeit, and cause and procure to be falsely made, forged and counterfeited, with intent to defraud the United States, certain writings, to-wit: A-14h * * * gasoline ration coupons; * * *." Count two charges that the defendants "did with intent to defraud the United States wilfully, unlawfully and feloniously have in their possession, with intent to utter and publish as true, certain false and counterfeit writings, to-wit: 2250 Series A-14h ration coupons, said defendants, and each of them, then and there knowing the same to be false and counterfeit; * * *."

The defendants were tried and convicted on both counts one and two, and sentenced to imprisonment on each count. They appeal.

There is substantial evidence to support the following statement of facts. Government agents, acting on information given them, made certain investigations and discovered that appellants, Carney and Ramsey, were purchasing certain equipment and articles similar to that used in printing gasoline ration coupons. In making these purchases, it was noted that fictitious names were used. Certain articles requiring priority ratings were likewise purchased. They also observed that the packages purchased by these men were delivered to 2433 Exposition Place. Having secured a search warrant, the agents went to the premises in question and a search first of the garage and then of the residence was made. Counterfeit coupons found in the house and a press, plates, inks, type, etc., found in the garage were seized. Counterfeit coupons and receipts for supplies for the making of such coupons were found on the persons of the appellants. Motions to suppress this evidence on the ground that the search and seizure was unlawful under the Fourth and Fifth Amendments to the Constitution were denied.

Appellants contend that the district court erred in holding that there was probable cause shown in the affidavit upon which to issue a search warrant, and that it also erred in denying the motion to suppress the evidence obtained through the use of the alleged illegal warrant.

It is claimed that the warrant was invalid in that the affidavits upon which it is based fail to show facts that an offense had occurred, and that the warrant does not adequately describe or identify the property to be seized.

The evidence of crime, which the appellants sought to have suppressed, was ob-

---

[1] The first count was amended in open court and we hold later in the opinion that the act of amending the count nullified it as a legal charge.

tained in the following circumstances. Having seen the appellants enter the garage in the rear of the premises, carrying several packages, the agents followed. Upon entering, the agents saw a printing press and other articles used in the printing of gasoline ration coupons. Appearances suggested a sudden cessation of operations. They sought to serve the heretofore mentioned search warrant on appellants, who refused to accept it, and it was placed on a bench near the press Both appellants were thereupon placed under arrest. The press appeared to have been in recent operation. The agents and appellants then entered the house, Ramsey bringing the search warrant along, having picked it up as he left the garage. Numerous gas ration coupons which the agents thought to be counterfeit were found in the house.

■ Of course, no search warrant was necessary for search of the garage, since the Fourth Amendment does not apply to buildings detached from the residential structure. In Earl v. United States, 9 Cir., 4 F.2d 532, the court stated: "We are of the opinion that, under the circumstances disclosed in the evidence, a search warrant was unnecessary, and that the case discloses no unreasonable search or seizure. The seizure was made in a garage, which the plaintiffs in error occupied under a lease. The garage was the basement of a dwelling house, with which it was wholly unconnected, and which was leased to and occupied by other tenants. So far as it concerns this case, the garage was in the position of a detached building, occupied and used only for garage purposes. * * * A garage, such as that in question here, is not a 'house,' within the protection of the constitutional amendment. It is no more immune from search than would be a barn or other outbuilding." See Vaught v. United States, 9 Cir., 7 F.2d 370, and Gay v. United States, 9 Cir., 8 F.2d 219, 220, wherein it was said: " * * * we deem it immaterial whether there was a valid search warrant, for clearly, under the circumstances, no search warrant was necessary. The garage was a detached building, separated three or four feet from the residence, and unconnected therewith." As stated in Vaught v. United States, supra, 7 F.2d pages 370, 371,

"We can see no ground for the contention that the search and seizure were illegal. It was plain that the building was not a home or residence, nor being used as such. The odors which come from it were of beer, and the things seen in the building were such as used in making beer. There was enough to justify the reasonable belief that defendant was at the time engaged in the commission of offenses defined * * * and to warrant seizure of the beer and the instrumentalities used in making beer."

■ As to the house, assuming it to be a dwelling, we find the affidavits sufficient for issuance of the warrant. In Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 549, 69 L.Ed. 1032, the court stated: "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant." See Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; United States v. McGuire, D.C., 300 F. 98, 102. In United States v. Bookbinder, D.C., 278 F. 216, affirmed, 3 Cir., 287 F. 790 certiorari denied 262 U.S. 748, 43 S.Ct. 523, 67 L.Ed. 1213, a warrant was held to be validly issued on an affidavit that certain liquor described therein had been smuggled. We agree that the requisite of probable cause was satisfied in the instant case. In Angello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 51 A.L.R. 287, 409, 69 L.Ed. 543, 39 A.L.R. 790, Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 51 A.L.R. 409, the court stated: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was com-

mitted, as well as weapons and other things to effect an escape from custody is not to be doubted." In Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543, 39 A.L.R. 790, the court stated: "When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution." Further, it has also been suggested that articles which a person unlawful possesses are not protected by the amendments in question. See Carroll v. United States, supra; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; United States v. Seltzer, D.C., 5 F.2d 364; Milam v. United States, 4 Cir., 296 F. 629; Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453.

We hold that the issuance of the search warrant was proper, that it was a valid warrant, that the evidence justified the agents in entering, arresting the appellants and in seizing evidence of the crime and no error was committed by the court by refusing to suppress the evidence which was seized in the house and as well in the garage.

■ It is next contended that the court erred in its decision that the indictment and each count thereof stated an offense in violation of the laws of the United States. It is claimed by the appellants that the indictment does not state an offense in that gasoline ration coupons are not "writings" but are entirely printed and hence not within the definition of "other writings" as that term is used in 18 U.S.C.A. § 72.

It is our opinion that gasoline ration coupons come within "other writings" under 18 U.S.C.A. § 72. See United States v. Serpico, 2 Cir., 148 F.2d 95; United States v. Michener, 67 S.Ct. 1509. The point is inherent in the latter case, and the Supreme Court's reversal is tantamount to holding against appellant on it.

It is also claimed that there was error in indictment charges two offenses growing out of the same act, contending that it would be impossible for a person to make, forge and counterfeit gasoline ration cou-

pons without having possession. As stated by the trial judge, the statute defines two separate offenses, that is, counterfeiting documents as charged in the first count and possessing counterfeit documents as charged in the second count. Each act is made criminal and is punishable independently under the Act. The principle contended for is that a defendant cannot be punished twice for the same offense or one that is necessarily included within the other; the same evidence which proves count one will sustain likewise a conviction on count two. We treat the point as though it is of importance in the case but if we are right in holding that the first count was nullified by its amendment as we do hereinafter the point is not in the case at all.

■ The test laid down in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, is whether each of the offenses created requires proof of a different element. Quoting from the opinion in that case: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." In that case two sales of morphine not in or from the original stamped package, the second being initiated after completion of the first, were held to be separate and distinct offenses under the Narcotics Act, 26 U.S.C.A. Int. Rev. Code, § 2550 et seq., even though the buyer and seller were the same in both instances and the lapse of time between the two sales was brief.

In Albrecht v. United States, 273 U.S. 1, 11, 47 S.Ct. 250, 254, 71 L.Ed. 505, the defendant was charged with possessing and selling liquor in different counts. It was contended that there was double punishment since the liquor sold was the same as that possessed and he had been convicted on each. The court held that possessing and selling are distinct offenses, stating that: "One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession, or one may have possession and later sell, as appears to have been done in this case. The

fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."

In Gavieres v. United States, 220 U. S. 338, 31 S.Ct. 421, 55 L.Ed. 489, the defendant was convicted and punished under an ordinance prohibiting drunkenness and rude and boisterous language, and it was held that he was not placed in double jeopardy by being subsequently tried under another ordinance for insulting a *public officer* even though the latter charge was based on the same conduct and language as the former. The court stated that they were separate offenses requiring separate proof to convict. The same evidence would not sustain both, for as stated by the court the evidence sufficient for conviction under the first charge would not have convicted under the second indictment.

In the recent case of Michener v. United States, 8 Cir., 157 F.2d 616, the circuit court held that an indictment in two counts, count one charging the making or procuring to be made a plate similar to a plate from which genuine federal reserve notes have been printed, and count two charging possession of such a plate, charged but one offense so that conviction under one count was held to be a bar to prosecution under the other. However, the case has been reversed by the Supreme Court in a per curiam opinion, June 2, 1947, on authority of the Blockburger, Albrecht and Gavieres cases, supra.

Count one in the instant case requires proof of actual counterfeiting or causing to be counterfeited, whereas count two does not. Count two requires proof of possession of counterfeited coupons and an intent to utter and publish them as true, not present in the requisites of count one. Both counts require an intent to defraud the United States.

■ The point that but one offense was charged by the record is not well taken.

See Wiley v. United States, 9 Cir., 144 F.2d 707; Horton v. United States, 5 Cir., 151 F.2d 406; Matthews v. Swope, 9 Cir., 111 F.2d 697, 698; Power v. Squier, 9 Cir., 130 F.2d 868, 869; Michener v. Johnston, 9 Cir., 141 F.2d 171, 174, certiorari denied 324 U. S. 874, 65 S.Ct. 1011, 89 L.Ed. 1427.

■ The appellants next assert that the indictment is defective in that it does not state that A-14h gasoline ration coupons were coupons of the United States "or other type." It is not necessary to make such a statement in the indictment. The statute requires the allegation that they have been forged and are possessed with intent to defraud the United States. See Johnson v. Warden, 9 Cir., 134 F.2d 166.

■ We come now to the amendment to the first count. Appellants assign this act as reversable error and we think the authorities compel that conclusion. The indictment as it came from the grand jury charges in the first count that appellants "made, forged and counterfeited K-14h" gasoline ration coupons. After selection of the jury but prior to opening arguments and by consent of counsel the court ordered the amendment to that count by changing the K to A making the charge read that appellants made, forged and conterfeited A-14h gasoline ration coupons. Count one of the original indictment was accordingly changed on its face by the clerk to conform.

The order to amend count one of the indictment was error of the most serious kind, for the rule is that no authority exists to amend any part of the body of an indictment without reassembling the grand jury and to do so ousts the court of its power to proceed. This rule has been early defined by the Supreme Court in Ex Parte Bain, 1887, 121 U. S. 1, 13, 7 S.Ct. 781, 787, 30 L. Ed. 849, as follows: "It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions we have already referred to, as well as sound principle, require us to hold

that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists. It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime, for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the constitution, can be 'held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a nolle prosequi had been entered. There was nothing before the court on which it could hear evidence or pronounce sentence."

In Dodge v. United States, 2 Cir., 1919, 258 F. 300, 305, 7 L.R.A. 1510, certiorari denied 250 U.S. 660, 40 S.Ct. 10, 63 L.Ed. 1194, words were stricken from the indictment as surplusage, and in holding that such action avoided the indictment, the court said: "At the close of the case counsel for the government moved to strike out as surplusage a portion of the first paragraph of the first count of the indictment and the word 'mutiny' from the first paragraph of the second count. Counsel for defendant at once said: 'No objection.' The court granted the motion. This is now assigned for error. That it was error of the most serious kind is not to be doubted. The rule is almost universally recognized, both in this country and in England, that an indictment cannot be amended by the court, and that an attempt to do so is fatal to a verdict upon the count.

"The Supreme Court in Ex parte Bain, 121 U.S. 1, 7 S. Ct. 781, 30 L. Ed. 849, declared that it was beyond question that in the English courts indictments could not be amended, and that no authority had been cited in the American courts which sustained the right the right of a court to amend any part of the body of an indictment without reassembling the grand jury, unless by virtue of a statute. In that case the trial court amended the indictment by striking out six words as being surplusage. The Supreme Court held that this deprived the court of power to try the prisoner. There was only one count in the indictment in that case. And the court said:

" 'The power of the Court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a nolle prosequi had been entered.'

"We therefore hold in the instant case that the amendment made in the first two counts deprived the court of power to proceed upon those counts; but this did not affect the right to try the defendant upon the third and fourth counts."

Both of the last quoted-from cases are cited as authority in our own circuit in Stewart v. United States, 9 Cir. 12 F.2d 524, where all parties consented to the court's striking certain words as surplusage the court holding such action to be fatal error. In United States v. Norris, 281 U.S. 619, 623, 50 S.Ct. 424, 74 L. Ed. 1076, it was stated that the defendant's consent does not affect the rule. See also Edgerton v. United States, 9 Cir., 143 F.2d 697.

In Gridley v. United States, 6 Cir., 44 F.2d 716, 741, an amendment was permitted by striking out the figure six and substituting the figure five in "December 1926," the date on which the use of the mails to defraud was alleged to have occurred. The court held that the date was immaterial and the amendment was not prejudicial error. This affected only two counts and the verdict of guilty was as to all counts, and punishment

did not exceed that which could be imposed on one count.

In United States v. Fawcett, 3 Cir., 115 F.2d 764, 766, 132 A.L.R. 404, an amendment was permitted in the caption to the complaint as to the defendant's name, the court stating that this was not an amendment of the body of the indictment and not a substantive change as would be violative of the Fifth Amendment.

In United States v. Reisley, D.C., 32 F. Supp. 432, 435, an indictment was amended changing the word "of" to "rendered" and the court held that this was not such a material alteration as would vitiate the indictment, but rather it was an inconsequential alteration in that it was merely for purposes of perfecting a meaningless sentence.

■ Whether or not the Supreme Court would hold the striking of mere surplusage from an indictment or the rearrangement of its composition fatal error, we need not venture an opinion for a more serious situation confronts us in this case. The charge in count one of the indictment as made by grand jury was that the defendants defrauded the United States by forging and counterfeiting K-14h gasoline ration coupons. There never were any original K-14h gasoline ration coupons. There were, however, original A-14h coupons. It may well be that the grand jury intended to use the letter "A" instead of "K," but neither the trial court nor this court can speculate on the intent of the grand jury. Because it is probable that "K" was inadvertently used instead of "A" does not authorize any court to proceed under such assumption. The conviction and judgment as to count one must be reversed. No point is made that the introduction of evidence as to count one as amended did or could affect the result of the trial as to count two. In fact appellants are in no position to make such point since the amendment was with their consent. How-

ever, we have read the evidence with this point in mind and are of the opinion and hold that appellants have suffered no prejudice in the premises.

Appellants claim error because the court declined to give certain proffered instructions on the subject of intent but we think them wrong. These proffered instructions, excepting one, combined the idea of intent with reference to the use to which the coupons were to be put. Appellants contended that they were merely to be placed on legitimate advertising matter with some mark upon them showing that they were not genuine and that they were and were intended to be merely imitations and that such imitations are lawful.

■ The court correctly instructed the jury on intent by reading the statute under which the charge was made and further instructed the jury specifically that the offense charged required proof of the illegal intent beyond a reasonable doubt. Further the court charged the jury that the acts proved to have been done must have been done with intent to do them and the doers must be found to have had guilty minds and have harbored the intent to violate the law.

The court did not avail itself of its right to comment directly upon the evidence or as to the theory of either the prosecution or the defense. Had it analyzed the evidence for the prosecution it would have assumed the duty of fairly stating the evidence of the defense. It did neither as was its right under the discretion the law gives it. The requested instruction not included in the above statement was repetitious of instructions given.

The judgment as to count one is reversed and having been made upon a null charge it is held to be of no effect and the sentence under it is hereby stricken from the judgment. The judgment as to count two is affirmed.