**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hobert Leon EDWARDS, Defendant-**
**Appellant.**

**No. 72–1476.**

United States Court of Appeals,
Ninth Circuit.

July 24, 1972.

As Amended Aug. 15, 1972.

John W. Keker, Asst. Federal Public Defender (argued), San Francisco, Cal., for defendant-appellant.

Janet Aiken, Asst. U. S. Atty. (argued), F. Steele Langford, Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before HAMLEY and BROWNING, Circuit Judges, and FERGUSON, District Judge.*

HAMLEY, Circuit Judge.

Hobert Leon Edwards appeals from his conviction of the offense of attempted armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d).

Edwards first argues that the trial court erred in denying defendant's motion, made before trial, that the proceedings be stayed because the petit jury selection procedure in use in the Northern District of California fails to comply with the Jury Selection and Service Act of 1968 (Act), 28 U.S.C. § 1861 et seq. The motion was timely and an appropriate way to challenge compliance with the jury selection procedures. *See* 28 U.S.C. § 1867(a), (d).

The basis of defendant's motion was that, under the petit jury selection procedure in use in the Northern District of California at the time of the trial, all citizens of the six counties within the Eureka and Oakland divisions of that district had no opportunity to serve on federal juries. In urging that the Act

* The Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation.

requires that all citizens shall have the opportunity to be considered for service on grand and petit juries in the districts in which they reside, defendant relies primarily upon the following italicized portions of the declaration of policy set out in 28 U.S.C. § 1861:

"§ 1861. Declaration of policy

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. *It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.*" (Emphasis supplied.)

Defendant, while urging the court to consider the Act as a whole, also calls special attention to 28 U.S.C. § 1863(b)

(3), which, among other things, requires that every jury selection plan authorized by the Act "shall ensure that each county, parish, or similar political subdivision within the district or division is substantially proportionally represented in the master jury wheel" for that district or division.[1] In addition, defendant calls attention to a provision of the Act, 28 U.S.C. § 1863(b) (7), under which the jury selection plan can specify a distance from the courthouse beyond which a summoned juror's request for discharge is automatically granted.[2]

The Act (28 U.S.C. § 1863(a) ) provides that each United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of 28 U.S.C. §§ 1861 and 1862.[3] The amended Plan of the United States District Court for the Northern District of California (Plan), approved May 4, 1970, divides that district into four judicial divisions, known as the Eureka, Oakland, San Francisco and San Jose divisions.[4] The

---

1. A "division" is defined in 28 U.S.C. § 1869(e) as follows:

"(e) 'division' shall mean: (1) one or more statutory divisions of a judicial district; or (2) in statutory divisions that contain more than one place of holding court, or in judicial districts where there are no statutory divisions, such counties, parishes, or similar political subdivisions surrounding the places where court is held as the district court plan shall determine: *Provided*, That each county, parish, or similar political subdivision shall be included in some such division;"

2. In this connection, defendant calls attention to the following statement in House Report No. 1076, issued on February 26, 1968, on S. 989, which became the Jury Selection and Service Act of 1968 (1968 U.S.Code Cong. & Admin.News, pp. 1792, 1801) :

"[T]he bill allows each district to assess it own setting so as to insure that people in certain groups are not burdened by geographical and transportation hardship.

"Since names of prospective jurors will be selected from the voter lists of all political subdivisions within the dis-

trict or division, persons living far from the courthouse will, in contrast to present practice, be afforded the opportunity to serve if they desire to do so, but a request for an excuse must be granted."

3. 28 U.S.C. § 1861 is quoted above. 28 U.S.C. § 1862 provides:

"No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status."

4. The Northern District of California has no statutory divisions. *See* 28 U.S.C. § 84(a). The four divisions of that district are described in the Plan as follows:

"*EUREKA DIVISION* consisting of the Counties of Del Norte, Humboldt, Lake and Mendocino.

"*OAKLAND DIVISION* consisting of the Counties of Alameda and Contra Costa.

"*SAN FRANCISCO DIVISION* consisting of the Counties of Marin, Napa, San Francisco, San Mateo and Sonoma.

"*SAN JOSE DIVISION* consisting of the Counties of Monterey, San Benito, Santa Clara and Santa Cruz."

policy declaration set out in the Plan closely follows the statutory policy declarations set out in 28 U.S.C. §§ 1861 and 1862.

Consistent with 28 U.S.C. § 1863(b)(3)[5] and (4), the Plan calls for the maintenance of a "master" jury wheel for each of the four divisions within the district. The names of all persons randomly selected from the voter registration lists of the counties in each division are to be placed in the master jury wheel for the respective divisions.

In addition to these master jury wheels, the Plan, consistent with 28 U.S.C. § 1866(a), requires the clerk to maintain separate "qualified" jury wheels for each division in the district. There is to be placed in these wheels the names of all persons drawn from the master jury wheel for such division, and not disqualified, exempt or excused pursuant to the Plan.

The Plan also provides for the maintenance of "ready" wheels for each division, to be drawn by the clerk at random from the various qualified wheels. Each ready wheel shall contain such jurors as have not been excused or otherwise disqualified by the court under the Plan.[6] Each ready panel is to be empaneled in the San Francisco, Oakland and San Jose divisions beginning on the first Monday in April and October "whenever necessary for the regular sessions of the Court at San Francisco, Oakland and San Jose." A ready panel is to be empaneled for the Eureka division on the last Monday in September "whenever necessary for sessions of this Court at Eureka." For the purpose of obtaining a jury panel for a particular trial, the clerk is to draw at random from the ready jury wheels.

In compliance with the Plan, master jury wheels and qualified juror wheels are maintained in San Francisco for all four divisions of the Northern District of California. At the time of the trial herein, which commenced on December 13, 1971, ready wheels were also maintained for the San Francisco and San Jose divisions, but not for the Eureka and Oakland divisions. At that time no criminal trials were being held in the Eureka and Oakland divisions.[7] Since the trial of Edwards, ready wheels have been maintained for both Eureka (beginning April 17, 1972) and Oakland (beginning March 24, 1972), and criminal cases were set for trial in both of these divisions in 1972.

Under established procedure in the Northern District of California, a criminal trial is held in the Eureka or Oakland divisions only when the court finds upon its own motion, motion of any party, or stipulation, that the convenience of parties and witnesses, in the interest of justice, will be served by transferring the action to Eureka or Oakland.[8]

5. 28 U.S.C. § 1863(b)(3) provides, in part, that the procedures specified in a plan devised pursuant to the Act

"shall be designed to ensure the random selection of a fair cross section of the persons residing in the community in the district or division wherein the court convenes."

6. The Act does not specifically provide for the maintenance of juror "ready" wheels. However, the function which such wheels serve in the Plan under discussion, is contemplated by 28 U.S.C. § 1866(a), where it is provided:

"From time to time, the jury commission or the clerk shall publicly draw at random from the qualified jury wheel such number of names of persons as may be required for assignment to grand and petit jury panels."

7. The 1966 amendment of Rule 18, Federal Rules of Criminal Procedure, eliminated the prior requirement that the prosecution shall be in a division of the district in which the offense was committed. The present Rule 18, consistent with the Sixth Amendment, provides only that the prosecution shall be had in the district in which the offense was committed. The rule leaves it to the discretion of the court to fix the place of trial within the district. See Notes of Advisory Committee on Rules, 18 U.S.C.A., F.R.Crim. P., Rule 18, page 113.

8. This procedure for the commencement of all criminal actions in the San Fran-

Defendant Edwards did not request a trial in either the Eureka or Oakland divisions. The offense for which he was tried and convicted occurred in San Francisco, and that is where he was tried. Approximately thirty-six percent of the population of the Northern District of California resides in the Eureka or Oakland divisions. While, at the time of Edwards' trial, that population had appropriate representation on the Eureka or Oakland divisional "master" and "qualified" wheels under the Plan, they were not, as described above, represented on any "ready" wheel because, up to then, there had been no criminal trials in either of these divisions.

As we understand Edwards' argument, he does not object to the procedure followed in the Northern District of California concerning the commencement of all criminal proceedings in the San Francisco division and the possible subsequent transfer of some of these to the Eureka and Oakland divisions, apart from the fact that, up to the time of his trial, no trials had been transferred to the Eureka and Oakland divisions.[9] But he urges that in view of the fact that no trials were being held in the Eureka or Oakland divisions, the Plan should have made provision for the inclusion of residents of the Eureka and Oakland divisions on the jury ready wheels, described above, utilized in selecting jurors for San Francisco, and possibly San Jose, trials. Otherwise, he asserts, the combined operation of the Plan and the Local Rules described above thwarts the policy declared in the second sentence of 28 U.S.C. § 1861 (quoted and italicized above). That policy is that "all citizens" shall have the "opportunity to be considered" for service on grand and petit juries in the district courts of the United States.[10]

■ The statement of policy upon which Edwards relies, is the second of two statements of policy set forth in 28 U.S.C. § 1861. The first policy declaration is that all litigants in federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random "from a fair cross section of

cisco division of the Northern District of California, and for possible transfer thereafter to another division of the district, is not provided for in the Plan, but in the court's Local Rules, as amended November 1, 1970. Local Rule 7(c) provides that all proceedings, both civil and criminal, for which venue lies in the Northern District of California, shall be commenced at San Francisco and maintained there "unless and until transferred to Eureka, Oakland or San Jose." This rule is subject to the exception, set out in Rule 7(e), that as to criminal offenses occurring in the counties covered by the San Jose division, the indictment or information shall be assigned to the San Jose division, subject to retransfer if the court finds that the interests of justice, with due regard to the convenience of the defendant and witnesses, will be served.

Neither Rule 7(e) nor any other Local Rule directly specifies the circumstances under which criminal proceedings may be transferred to the Eureka or Oakland divisions. However, the district's Local Rule 212 provides that the Federal Rules of Civil Procedure and the General and Civil Local Rules of the district court shall govern criminal proceedings as they

may be applicable, directly or by analogy, except insofar as they conflict with any constitutional provision, statute of the United States, Federal Rules of Criminal Procedure or Local Criminal Rules of the district. Under this rule, the district's General Rule 7(d) pertaining to the transfer of civil actions, governs the circumstances under which a criminal action may be transferred to the Eureka or Oakland divisions. Rule 7(d) provides for the transfer of an action to Eureka or Oakland whenever the court finds, upon its own motion, motion of any party, or stipulation, that the convenience of parties and witnesses, in the interest of justice, will be served by such a transfer.

9. Nor does he complain because his own trial was held in the San Francisco division.

10. Edwards also calls attention to statements in the House Report referred to in note 2 above, with regard to the concern that members of Congress had that each qualified citizen have an equal opportunity to cause his name to be among those from which random selection is made.

the community in the district or division wherein the court convenes."

Pursuant to the Act, and the Plan under consideration, Edwards had a jury which fully met this policy requirement. It is true, however, that because of the interaction of the Plan and the Local Rules, as described above, not all citizens of the district had, at the time of Edwards' trial, an "opportunity to be considered for service on . . . petit juries" in the district, as provided in the second policy declaration of 28 U.S.C. § 1861.

In our opinion, however, the failure to conform to this second policy declaration, assuming Edwards has standing to raise the question, is not due to noncompliance with the Act, but to the operation of a number of variables which the district court could not reasonably have foreseen when it formulated the Plan and prescribed the relevant Local Rules. These variables are: (1) the extent to which federal offenses are committed in the Eureka and Oakland divisions, (2) the extent to which the parties involved in any such offense move to transfer the cause to one of those divisions, and (3) the extent to which, in the exercise of its discretion, the court may transfer such causes to the Eureka or Oakland division for the convenience of parties and witnesses.

If the district court had known in advance that the interaction of the Plan and pertinent Local Rules, as affected by the described variables, would result in no trials being held in the Oakland or Eureka divisions, perhaps reversal would be appropriate. Any such intentional deprivation of the opportunity of citizens in the Oakland and Eureka divisions to be considered for jury service

might deny equal protection to those citizens. However, we need not decide that question here.

No one contends that the district court knew or could have known in advance of this eventuality. Indeed, even today, we are not advised in this record which of the described variables operated to prevent any federal criminal trials from being held in the Eureka and Oakland divisions up to the time of Edwards' trial.

■ In our opinion, the Plan formulated by the United States District Court for the Northern District of California is in full compliance with the Act, in the respect in question.[11] We therefore hold that the trial court did not err in denying defendant's motion to stay the proceedings.

Edwards next argues that the trial court erred in denying his pretrial motion to suppress the evidence, including two weapons, seized at his San Francisco residence, and in overruling his objection to the introduction of this evidence at the trial.[12] The motion and objection were made on the ground that the Government did not prove that, in verbally assenting to the search and seizure, Edwards was aware of his Fourth Amendment rights. As authority for this argument, Edwards cites Bustamonte v. Schneckloth, 448 F.2d 699 (9th Cir. 1971), cert. granted 405 U.S. 953, 31 L. Ed.2d 230, 92 S.Ct. 1168 (1972), and Schoepflin v. United States, 391 F.2d 390 (9th Cir. 1968).

We first summarize the relevant facts, considered in the light most favorable to the Government. Following a legal admonition of his constitutional rights Edwards confessed to the attempted rob-

---

11.. The Jury Plan adopted for the United States District Court for the District of Oregon is dealt with in United States v. James, 453 F.2d 27, 29 (9th Cir. 1971), but the particular issue now before us is not involved in *James*.

12. Edwards' counsel also included his objection to the assertedly warrantless search for the guns as one of the grounds for a new trial, which motion was also denied.

bery. In his confession he mentioned the subject of guns, saying that the Thomas brothers brought the guns. He admitted that he had the guns as he entered the bank and that, after the attempted robbery, he took the guns and went back to his house. Police Inspector Gilford then asked Edwards where the guns were; he answered that they were in his house on Haight Street, one in a drawer and the other in a closet. Edwards then added that the inspector could go and get them, and that Edwards thought his wife was at home and if the inspector told her Edwards had asked the inspector to come and get the guns that she would let the inspector have them.[13]

These facts show that the police did not request permission to search for and seize the weapons, but that Edwards voluntarily invited the police to go to his residence and obtain them and told the police precisely where the weapons were located. Under these circumstances there was no search or seizure. *Busta-*

*monte* and *Schoepflin,* both *supra,* are not applicable.

We conclude that the weapons in question were not unlawfully seized, and were properly admitted into evidence.

Finally, Edwards argues that his right to indictment by grand jury was violated when the trial court "amended" the indictment during the trial to conform to the Government's proof.

The indictment charged that the offense was committed "in the City of Berkeley, County of Alameda, State and Northern District of California." After the jury had been sworn, counsel for the Government informed the court that the Government's proof would show that Edwards robbed a bank in the City and County of San Francisco. After a recess the trial judge ruled that the words "City of Berkeley, County of Alameda" were surplusage. When the jury returned to the courtroom the trial court instructed them as set out in the margin.[14] Counsel for Edwards duly ex-

---

13. The police inspector testified that he then went to Edwards' Haight Street residence and knocked on the door. A lady in the apartment across the hall, who was apparently Edwards' wife, came out of a door and asked him what he wanted. The inspector introduced himself and the two uniformed officers who were with him and told the lady her husband had told him to come to the house to recover the two guns. The inspector informed her where Edwards said the guns were. The lady then directed the inspector to the bedroom, where he found a pistol in the bureau drawer and a sawed-off rifle in the closet, as Edwards had indicated.

14. "There was, due to the clerical error in the office of the United States Attorney, a mistake of the City and County where the Bank of America branch involved was located. The indictment here says 'City of Berkeley, County of Alameda,' and I wanted to be sure, before proceeding, that it would not be a mistake to go ahead. I have concluded that it would not be a mistake to go ahead and I am going to instruct you now and I will instruct you

later on that the words relating to the City and County and State are surplusage and the bank branch involved here is and was at all times in San Francisco and that is in the jurisdiction, as the other place is, in the jurisdiction of this Court.

"So, I will just warn you to disregard that clerical error made in the United States District Attorney's office in the indictment, treating those words 'Berkeley' and 'Alameda County,' as surplusage. Don't pay any attention to that. Everything else is very important, but the case is not enough to decide, to worry about that language.

"Now, is there any juror that has any question about what I have just said? It is clerical error in which we have the branch in the wrong town and should be San Francisco and they put it all over in Berkeley and there is only one Glen Park branch. The important thing is that this has nothing to do with the guilt or innocence of the defendant. This doesn't indicate in any way that the Court is of the view that the defendant is guilty or not guilty. It has nothing to do with that. It is just a technical clerical error that you are to disregard and it is very

cepted to this instruction on the ground that it constituted an impermissible amendment to the indictment.

The Fifth Amendment entitled Edwards to trial on an indictment of a grand jury. Rule 7(d), Federal Rules of Criminal Procedure, provides that the court "on motion of the defendant may strike surplusage from the indictment or information." The Notes of the Advisory Committee on this rule contain this observation concerning the rule:

"The authority of the court to strike such surplusage is to be limited to doing so on defendant's motion, in the light of the rule that the guaranty of indictment by a grand jury implies that an indictment may not be amended. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. By making such a motion, the defendant would, however, waive his rights in this respect." 18 U.S.C.A. F.R.Crim.P., Rule 7, at p. 325.

The law with respect to the formal or informal amendment of indictments, the disregard of parts of an indictment as "surplusage," and the like, is in a confused state, as pointed out in Heisler v. United States, 394 F.2d 692, 695–696 (9th Cir. 1968). However, giving consideration to the varying Supreme Court and court of appeals decisions cited in *Heisler,* we conclude that, under the circumstances of our case, defendant's right to indictment by grand jury was not violated in view of the following factors: (1) no change was made on the face of the indictment, (2) the reference in the indictment to "the City of Berkeley, County of Alameda," was truly surplusage, and (3) in view of the instruction given the jury, Edwards was not prejudiced.

Affirmed.

important that you don't assume from this that there is any evidence of any kind that any offense was committed by this defendant. There is nothing before you or anybody that there is any offense,

but in San Francisco at the Glen Park branch, is that clear? If there are any questions, I will be glad to clear it up for you."