**UNITED STATES of America,
Plaintiff-Appellee,
v.
Harold DAWSON, Defendant-Appellant.**

**No. 73–2356.**

United States Court of Appeals,
Ninth Circuit.

May 2, 1975.

Certiorari Denied Oct. 6, 1975.

See 96 S.Ct. 104.

P. Vernon Zeitsoff, Deputy Federal Public Defender (argued), Los Angeles, Cal., for defendant-appellant.

Arthur W. Vance, Jr., Sp. Asst. U. S. Atty. (argued), for plaintiff-appellee.

## OPINION

Before BARNES and BROWNING, Circuit Judges, and McNICHOLS,* District Judge.

BARNES, Circuit Judge:

This is an appeal from a one-count conviction of bribery (18 U.S.C. § 201(d)). Appellant was found guilty of making an offer of money on January 4, 1973, with the intent to influence the testimony, under oath, of defendant's brother, Earl Dawson, respecting the burglary of the United California Bank in Laguna Niguel, California, which had occurred on March 25–26, 1972.

There are three issues raised by appellant. We use our own language to describe them:

1. In withdrawing from the trial jury's consideration (for lack of evidence) a portion of the indictment under which defendant was tried, did the trial judge amend the indictment in violation of defendant's Fifth Amendment right not to "be held to answer for . . . [an] infamous crime, unless on . . . indictment of a Grand Jury"?

2. Did the seizure, and subsequent admission into evidence, of defendant's hand printed note, taken from him in the visiting room of a prison in which defendant was incarcerated, constitute a violation of either defendant's Fourth Amendment right to be free from unreasonable searches and seizures, or his Fifth Amendment right not to be compelled to give self-incriminating testimony?

3. Did the trial judge abuse his discretion in admitting into evidence what appellant regards as irrelevant and prejudicial?

There is no dispute as to the proceedings occurring in the district court.

The defendant, Harold Lee Dawson, was indicted by a Federal Grand Jury for the Central District of California on April 30, 1973, in Case No. 12468–CD, for violation of 18 U.S.C. § 201(d), bribery of a witness, to wit: Earl Dawson, "with the intent to influence the testimony under oath of said Earl Dawson as a witness upon" the trial of United States v. Ronald Barber, et al., Case No. 11874–CD.

The defendant was arraigned upon that indictment before the Honorable Manuel L. Real, United States District Judge, on May 7, 1973, and trial thereon was set for June 12, 1973.

On June 11, 1973, superseding indictment No. 12719–CD was returned, charging defendant with violation of 18 U.S.C. § 201(d): bribery of Earl Dawson "with the intent to influence the testimony of said Earl Dawson as a witness at" the trial of United States v. Charles Albert Mulligan, et al., Case No. 10652–CD, and United States v. Ronald Barber, et al., Case No. 11874–CD, "and such hearings and other proceedings held in connection with the aforesaid cases." (C.T. 1–2.)

The original and the superseding indictments differ in only one regard; that is, the original indictment charges that the money was offered with the intent of influencing Earl Dawson's testimony in the *Barber* case, and the superseding indictment charges that the intent was to influence his testimony in both the *Mulligan* and the *Barber* cases. Defendant moved that the superseding indict-

* Honorable Ray McNichols, District of Idaho, sitting by designation.

ment be dismissed, because of duplicity and undue reliance on hearsay testimony before the Grand Jury. The motion was denied.

Defense ·counsel also filed a motion to suppress a note taken from the defendant in jail by a guard. This motion was heard and denied prior to trial (R.T. 13). The testimony on this motion showed that a jail guard on duty in the visitor's room saw conduct on the part of the defendant and another prisoner, (one James Dinsio, another jail inmate, and a co-defendant in the *Barber* trial), which led him to believe that the two prisoners were passing a note from one to another. Because such conduct was forbidden by prison regulations, the guard seized the note from the defendant, questioned the defendant about it, returned the note to the defendant, and shortly thereafter, being unsatisfied with the defendant's explanation, seized the note again.

The district court having denied defendant's motions to suppress and dismiss, Dawson was tried by a jury beginning on June 12, 1973. Final arguments were heard on the morning of June 14, and that afternoon Judge Real instructed the jury and sent them off to deliberate. One of the instructions given to the jury by the trial judge (the construction of which as either being to "amend" or "strike surplusage" is here at issue) was as follows:

> "There is removed from your consideration the conduct of the defendant as it might refer in any way to the Case Number 11874 entitled, 'United States versus Ronald Barber, Harry James Barber and James Frank Dinsio.' "

> "So you are to consider only the conduct of the defendant with reference to the Case Number 10652, which is the United States versus Charles Albert Mulligan, Ronald Barber, Harry James Barber, Phillip Bruce Christopher and Amil Alfred Dinsio." (R.T. 543.)

At 5:17 p. m. that same day the jury returned a verdict of guilty.

Dawson was sentenced, on June 29, 1973, to seven years imprisonment under the provisions of 18 U.S.C. § 4208(a)(2), and was made eligible for parole at such time as the Board of Parole may determine, and was required to pay a fine of Forty Thousand Dollars.

Defendant appeals. This Court has jurisdiction to entertain the appeal. (28 U.S.C. §§ 1291 and 1294.)

We find no error, and affirm.

## I. *Defendant's Right to a Grand Jury Indictment.*

The court, ·in instructing the jury as hereinbefore set forth, took from the jury the consideration of the following bracketed portion of the indictment:

> ". . . defendant . . . corruptly did . . . promise money . . . to Earl Dawson, a witness, before the United States District Court for the aforesaid District in cases pertaining to the burglary of a California Bank in Laguna Niguel, California, on March 25th, 26th, 1972, and captioned 'United States versus Charles Albert Mulligan, Ronald Barber, Harry James Barber, Phillip Bruce Christopher and Amil Alfred Dinsio,' Number 10652 Criminal, [and United States versus Ronald Barber, Harry James Barber and James Frank Dinsio, Number 11874 Criminal,] with the intent to influence the testimony under oath of the said Earl Dawson as a witness at such trials and such hearings and other proceedings held in connection with the aforesaid cases." (R.T. 542, 543.)

Both criminal cases named in the preceding indictment were prosecutions arising out of one bank robbery, that of the Laguna Niguel Branch of the United California Bank on March 25 and 26, 1972. The first criminal prosecution filed by the Government, No. 10652 was against Charles Albert Mulligan, Ronald Barber, Harry James Barber, Phillip Bruce Christopher, and Amil Alfred Dinsio. The second criminal prosecution filed by the Government, No. 11874, was

against Ronald Barber, Harry James Barber and James Frank Dinsio.

The only proof of an offer of money to Earl Dawson by defendant Harold Dawson to have Earl Dawson change his testimony as a witness at any one trial, was that appellant asked Earl Dawson "to help his friend Chuck Mulligan that was earlier convicted of this here bank burglary" (R.T. 105); that Earl should go back to "the lawyers" in Cleveland, and tell these people "that the FBI has made me lie during these other court proceedings" (R.T. 106); and that if I did so "they would set aside a large sum of money [—"twenty or twenty-five thousand dollars"—] if I would cooperate." (R.T. 105.)

Charles Mulligan was not named or charged in any way in the *Barber* case; and as the defendant only mentioned Mulligan as the person for whom "help" was asked, the trial court concluded that no evidence existed of bribery to help anyone involved in the *Barber* case. So concluding, and fearing that the jury might be needlessly confused by the reference to the *Barber* case, the trial court removed that issue from the jury's consideration by means of the aforementioned instruction.

The issue we now face is whether that instruction by the court constituted a violation of defendant's constitutional right to a Grand Jury Indictment. Or, stated alternatively, whether the trial court's removal of the issue of bribery relative to the *Barber* case amounted to a constitutionally impermissible amendment of the Grand Jury's indictment, or the innocuous striking of mere surplusage therefrom?

The Fifth Amendment guarantees that in federal criminal cases "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."

In Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), the United States Supreme Court announced the rule that an amendment to the body of an indictment violates defendant's Fifth Amendment rights and renders a conviction based thereon void.[1] The Court reasoned (*Id.* at 9–10, 7 S.Ct. 781[2]) that due

---

1. In *Bain,* the court was faced with the question of whether the striking of the italicized language from the portion of the indictment quoted below was an infringement of defendant's Fifth Amendment right to a Grand Jury indictment:

" '[Defendants] did then and there well know and believe the said report and statement to be false . . . and each of them, made said false statement and report . . . with intent to deceive *the comptroller of the currency and* the agent [of the Comptroller of the Currency] appointed [by the Comptroller] to examine the affairs of said association . . . .' " (121 U.S. at 4, 7 S.Ct. at 783.)

The court held the striking of the italicized language above was an amendment which violated defendant's constitutional rights.

2. "The learned judge who presided in the circuit court at the time the change was made in this indictment, says that the court allowed the words, 'comptroller of the currency and,' to be stricken out as surplusage, and required the defendant to plead to the indictment as it then read. The opinion which he rendered on the motion in arrest of judgment, referring to this branch of the case, rests the validity of the court's action in permitting the change in the indictment upon the ground that the words stricken out were surplusage, and were not at all material to it, and that no injury was done to the prisoner by allowing such change to be made. He goes on to argue that the grand jury would have found the indictment without this language. But it is not for the court to say whether they would or not. The party can only be tried upon the indictment as found by such grand jury, and especially upon all its language found in the charging part of that instrument. While it may seem to the court, with its better instructed mind in regard to what the statute requires to be found as to the intent to deceive, that it was neither necessary nor reasonable that the grand jury should attach importance to the fact that it was the comptroller who was to be deceived, yet it is not impossible nor very improbable that the grand jury looked mainly to that officer as the party whom the prisoner intended to deceive by a report which was made upon his requisition and returned directly to him. As we have already seen, the statute requires these reports to be made to the comptroller at least five times a year, and the averment of the indictment is that this report was made and returned to that officer in response to his

to the amendment of the indictment, the defendant was not tried on *the* indictment returned by the Grand Jury, as is his constitutional right, and that trial on the amended indictment is constitutionally repugnant because there is no way of knowing whether the Grand Jury would have returned the indictment as amended if they had been given the opportunity.

Although the language and rationale of *Bain* are exceptionally broad, in the considerable time that has passed since *Bain* was decided, the courts have engrafted several exceptions and limitations on this "no amendment rule," fore-

most being that making corrections of typographical errors, or making changes that are "merely a matter of form," are not constitutionally impermissible.[3]

"In addition to the rule permitting amendment on matters of form, another ameliorating doctrine is the rule that a portion of an indictment that the evidence does not support may be withdrawn from the jury, and this is not an impermissible amendment, provided nothing is thereby added to the indictment, and that the remaining allegations charge an offense." (C. Wright, 1 Federal Practice and Procedure 274–75 (1969).)[4]

requisition for it. How can the court say that there may not have been more than one of the jurors who found this indictment, who was satisfied that the false report was made to deceive the comptroller, but was not convinced that it was made to deceive anybody else? And how can it be said, that, with these words stricken out, it is the indictment which was found by the grand jury? If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." (121 U.S. at 9–10, 7 S.Ct. at 785.)

**3.** *See* Russell v. United States, 369 U.S. 749, 761–63, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962):

"This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form. Ex parte Bain, 121 U.S. 1 [7 S.Ct. 781, 30 L.Ed. 849]; United States v. Norris, 281 U.S. 619 [50 S.Ct. 424, 74 L.Ed. 1076]; Stirone v. United States, 361 U.S. 212 [80 S.Ct. 270, 4 L.Ed.2d 252]." (*Id.* at 770, 82 S.Ct. at 1050);

and *see, e. g.,* Stewart v. United States, 395 F.2d 484, 487–89 (8th Cir. 1968) (an amendment correcting typographical error as to the date of the offense, *i. e.,* July 21, 1967 changed to June 21, 1967, not impermissible); Heisler v. United States, 394 F.2d 692 (9th Cir.), cert. denied, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968) (court allows order correcting denomination of counterfeit Federal Reserve

Note identified by serial number. Indictment alleged it was a $20.00 bill when in fact it was a $10.00 bill); Dye v. Sacks, 279 F.2d 834 (6th Cir. 1960) (correction of misdescription of victim's name permissible); United States v. Denny, 165 F.2d 668 (7th Cir. 1947), cert. denied, 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948) (court upholds correction of stenographic mistake which had resulted in the misspelling of defendant's name in the second count of the indictment).

**4.** *See* Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927) (indictment charged defendant with conspiring to violate a treaty in addition to several federal statutes. The trial court instructed the jury to ignore the treaty violation since the treaty created no criminal offense. The Supreme Court upheld the trial court ruling (at 602, 47 S.Ct. at 534) that "a useless averment [in an indictment] is innocuous and may be ignored," and "that part of the indictment [which] is merely surplusage . . . may be rejected."); Salinger v. United States, 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398 (1926) (the court in *Salinger* distinguishes *Bain,* and at 548–49, 47 S.Ct. at 175 holds:

"The contention that the court, by withdrawing from the jury a part of the charge as without support in the evidence, amended the indictment and thereby prevented it from longer serving as an accusation by a grand jury is on no better plane than [petitioner's other contentions]. The indictment was not amended, either actually or in legal effect. It remained just as it was returned by the grand jury, and the trial was on the charge preferred in it and not on a modified charge. After the evidence was put in, the accused, believing that part of the charge had no support in the evidence, requested that that part be withdrawn from the jury, and the court acceded to the request when the final instructions were given. The

As is evident from the citations in notes 3 and 4, both of these exceptions now appear to be well considered and widely established law. However, in this Circuit, the implementation of the Fifth Amendment guarantee to a Grand Jury indictment has had a confusing and inconsistent history, prompting this Court in Heisler v. United States, 394 F.2d 692, at 695–96 (9th Cir.), cert. denied, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968); to comment that the case law was "out of joint" and to despair that the conflicting precedents could ever be reconciled. In a few earlier cases [5] this Circuit applied *Bain* in a draconian manner, prohibiting (in Carney v. United States, 163 F.2d 784 (9th Cir.), cert. de-

> scheme to defraud as set forth in the indictment was manifold in that it comprehended several relatively distinct plans for fleecing intended victims. What the court withdrew from the jury was all of these plans but one. Thus the court ruled that the evidence while tending to sustain the charge as respects one of the plans did not give it any support as respects the others. Whether this was right or wrong—as to which we intimate no opinion—it did not work an amendment of the indictment and was not even remotely an infraction of the constitutional provision that 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury.' ");
> and *see* United States v. Musgrave, 483 F.2d 327, 338 (5th Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); United States v. Griffin, 463 F.2d 177, 178 (10th Cir.), cert. denied, 409 U.S. 988, 93 S.Ct. 34, 34 L.Ed.2d 254 (1972); United States v. Auerbach, 423 F.2d 676 (5th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2195, 26 L.Ed.2d 560 (1970); Thomas v. United States, 398 F.2d 531 (5th Cir. 1967); Vincent v. United States, 337 F.2d 891, 895 (8th Cir. 1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965); United States v. Spector, 326 F.2d 345, 346–48 (7th Cir. 1963); Overstreet v. United States, 321 F.2d 459, 461 (5th Cir. 1963), cert. denied, 376 U.S. 919, 84 S.Ct. 675, 11 L.Ed.2d 614 (1964); Gambill v. United States, 276 F.2d 180 (6th Cir. 1960); Mellor v. United States, 160 F.2d 757, 762–63 (8th Cir. 1947), cert. denied, 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858 (1947); United States v. Krepper, 159 F.2d 958, 970–71 (3rd Cir. 1946), cert. denied, 330 U.S. 824, 67 S.Ct. 865, 91 L.Ed. 1275 (1947); cf. New England Enterprises v. United States, 400 F.2d 58, 65 (1st Cir. 1968), cert. denied, 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969).

nied, 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400 (1947)) even the change of an obvious typographical error. These cases however have been criticized (*see* C. Wright, 1 Federal Practice and Procedure 274 (1969)) and are inconsistent with the reforms in criminal pleading (*cf.* 8 Moore's Federal Practice ¶ 7.05[3], 7–29 (1968)) which eliminate the fatal effects of defects which are merely formal or technical, and which in no way prejudice defendant or alter the essential nature of the indictment. In any event, the more recent decisions of this Court have clearly adopted and repeatedly invoked both of the aforementioned exceptions to *Bain* as the law of this Circuit.[6]

**5.** Chow Bing Kew v. United States, 248 F.2d 466 (9th Cir.), cert. denied, 355 U.S. 889, 78 S.Ct. 259, 2 L.Ed.2d 188 (1957); Carney v. United States, 163 F.2d 784 (9th Cir. 1947), cert. denied, 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400 (1947).

**6.** *See* United States v. Petrucci, 486 F.2d 329 (9th Cir. 1973), cert. denied, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974) (where wilfulness not an element of the crime charged, allegation of wilfulness in indictment is mere surplusage, and refusal to instruct jury thereon held not an amendment of the indictment); United States v. Edwards, 465 F.2d 943 (9th Cir. 1972) (trial judge correctly instructed jury to ignore words "City of Berkeley, County of Alameda" included accidentally in the indictment; the bank which was robbed was in San Francisco); United States v. Buble, 440 F.2d 405 (9th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1971) (alteration of obviously erroneous dates as to filing of income tax returns not impermissible); United States v. Harvey, 428 F.2d 782 (9 h Cir. 1970) (trial court's disregarding of non-essential allegations in indictment—*i. e.* "wilfully" and "feloniously"—when instructing jury held permissible); United States v. Kartman, 417 F.2d 893 (9th Cir. 1969) ("The indictment alleged that defendant assaulted Deputy Marshal St. Germain 'knowing him to be such officer.' The trial court, holding that the quoted language was surplusage, declined to instruct the jury that the government must prove that the defendant knew Mr. St. Germain to be a marshal. The court's ruling was correct." *Id.* at 894); Heisler v. United States, 394 F.2d 692 (9th Cir. 1968), cert. denied, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968) (discussed in note 3, supra); Raymond v. United States, 376 F.2d 581 (9th Cir. 1967), cert. denied, 389 U.S. 898, 88 S.Ct. 221, 19 L.Ed.2d 220 (1967) (Circuit upholds as the striking of mere surplusage

Appellant calls our attention to Carney v. United States, *supra,* as contrary authority. First, we note that this Circuit has repeatedly, albeit technically, distinguished the rule in *Carney* and Stewart v. United States, 12 F.2d 524 (9th Cir. 1926); on the ground that these cases involved the actual and physical striking out of words on the face of the indictment.[7] In the instant case no changes appear on physical embodiment of the indictment (C.T. 1, 2), and hence the instant case is distinguishable too. We thus need not in this case resolve the issue of whether this Circuit would overrule *Carney* or *Stewart* in a case where the alteration of non-essential language not affecting the substantial rights of the defendant actually appears on the face of the indictment.[8] With respect to the vitality of *Carney* and *Stewart* in this Circuit, suffice it to note: (1) that this Court in Williamson v. United States, 262 F.2d 476 (9th Cir.), cert. denied, 359 U.S. 971, 79 S.Ct. 885, 3 L.Ed.2d 837 (1959); severely confines these cases, and its holding does every-

thing but overrule them; (2) this Court has not in recent memory followed these holdings of these cases (only citing them to distinguish them); and (3) this Court has repeatedly allowed to be done in effect by a jury instruction, what *Carney* and *Stewart* would prohibit were it done to the face of the indictment.[9]

Additionally, appellant cites our decision in Edgerton v. United States, 143 F.2d 697 (9th Cir. 1944); as endorsing a strict reading of *Bain.* We however view *Edgerton* as being consistent with the aforementioned exceptions to *Bain.* The court in *Edgerton,* after giving recognition to these exceptions, holds that the change there in question was not one of mere form, or the ignoring of an innocuous averment, but rather one affecting substance. The court went on to rule that such changes cannot be made by an instruction of the judge to the jury any more than they can be made by the actual physical alteration of the indictment.[10] So construed, *Edger-*

---

7. *See, e. g.,* United States v. Edwards, *supra* at 950; United States v. Harvey, *supra* at 784; Heisler v. United States, *supra* at 695–96; Soper v. United States, *supra* at 161–62.

8. In United States v. Skelley, 501 F.2d 447 (7th Cir. 1974), cert. denied, 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974), the Seventh Circuit faced a case where the trial judge had physically deleted certain erroneously typed serial numbers from the face of the indictment in a counterfeiting case. The court remarked:

"[10] While the exceptions do not completely engulf the rule, we are not prepared to make a fetish of the prohibition against amendment of an indictment by holding that it is reversible error to interlineate fictitious serial numbers which are inaccurate solely because of the transposition of two digits in

a ten digit string, which could have been omitted entirely from the indictment with no consequence, which need not be proved even if alleged, which the jury could have been instructed to ignore, which might have been corrected as typographical errors, which correctly describe some of the bills in evidence, and which are incorrect only with respect to whether the quantity of bills bearing one number or the other is twenty-five or two. Neither the nature nor the gravity of the offense is affected by the discrepancy. Under the circumstances, any technical error that might have been committed by touching pen to paper to alter the indictment itself, is wholly without substance, and could not have prejudiced defendant's rights. In United States v. Buble, 440 F.2d 405 (9th Cir. 1971), the trial court had not merely stricken inaccurate numbers from the indictment, but had permitted the substitution of different numbers, to correct an obvious error in the dates on which allegedly false tax returns had been filed. The Ninth Circuit found no prejudicial error, observing that the 'indictment did not require amendments, so amendments did not prejudice the defendant.'" (*Id.* at 453.)

9. *See, e. g.,* United States v. Edwards, *supra;* United States v. Raymond, *supra; cf.* United States v. Heisler, *supra.*

10. Note therefore that the later decisions in the *Edwards* and *Raymond* cases are not in-

804

*ton* stands for the same principles as enunciated by the Supreme Court in Stirone v. United States, 361 U.S. 212, 214, 80 S.Ct. 270, 4 L.Ed.2d 252 (1959), and Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), viz: that the court may not by any means (*e. g.,* physical alteration, jury instruction, or bill of particulars) alter the material and essential nature of an indictment or broaden the offense charged.

Turning now to the matter at hand, we must determine whether the instant case falls within one of the heretofore mentioned exceptions recognized by the modern trend of case law, or whether the jury instruction made below materially alters or broadens the offense charged in violation of the Fifth Amendment. We hold the instruction below was not constitutionally impermissible.

As the prosecution's brief states, the captions of the two indictments are completely surplusage. The caption language adds to the clarity of the charge to the appellant's benefit, but is not essential to the charge made. If the charge had read originally:

". . . defendant . . . corruptly did . . . promise money to Earl Dawson, a witness before the United States District Court for the aforesaid District in cases pertaining to the burglary of the United California Bank in Laguna Niguel, California, on March 25–26, 1972 [ . . . ] with intent to influence the testimony under oath of the said Earl Dawson as a witness at such trials and such hearings and other proceedings held in connection with the aforesaid cases,"

no reason to object to the indictment could have been successfully found by appellant.

█ It is clear to us that striking the surplusage to the superseding indictment

as ordered by the trial court was nonprejudicial to Harold Dawson. At most, the judge's instruction merely removed from the jury's consideration a charge not supported by the evidence. In no way did it broaden or materially alter the essential nature of the offense charged.[11] The superseding indictment, before and after the deletion by the court, still charged an offense, and still involved the same essential corrupt promise to pay money with intent to influence the testimony of a witness under oath "in cases pertaining to the burglary," (C.T. 1, lines 21 & 22), and "as a witness at such trials and such hearings and other proceedings held in connection with the aforesaid cases." (C.T. p. 1, line 28 to p. 2, line 2, inclusive.)

"The test of the sufficiency of an indictment is whether it (1) has all elements of the offense charged; (2) properly apprises defendant of what he must meet in preparation of his defense; and (3) enables him to plead double jeopardy in subsequent prosecutions. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932)."

United States v. Goodman, 457 F.2d 68, 73 (9th Cir.), cert. denied, 406 U.S. 961, 92 S.Ct. 2073, 32 L.Ed.2d 348 (1972).

In summary then, in the trial court's instruction to the jury we find: no error, no prejudice to defendant, and no infringement of defendant's Fifth Amendment right to a Grand Jury indictment.

II.  *Search and Seizure Issue.*

We turn now to a consideration of the Fourth Amendment issue which has been raised, concerning the constitutionality of the seizure of a note written by appellant (Ex. 12), which was taken from him by a prison guard while appellant was confined in jail awaiting trial.

consistent with *Edgerton*. *Edgerton* prohibits the alteration of an indictment by instruction where the alteration affects the substantial rights of the defendant. *Raymond* and *Edwards* permit instructions to the jury to disregard non-essential averments not materially affecting defendant's rights.

11.  Indeed, as in United States v. Noah, 475 F.2d 688, 692 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973), and United States v. Walters, 477 F.2d 386, 388 (9th Cir.), cert. denied, 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973); the court's action narrowed the charge.

■ There is no question but that jail inmates have certain more definite and more readily ascertainable constitutional rights under recent court decision than previously recognized. Nevertheless, as defendant's counsel concede, a prisoner in jail does not enjoy the same rights of privacy as do ordinary citizens in their homes or offices.

In Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) the Supreme Court observed that a prisoner's Fourth Amendment rights are extremely limited. As was stated in Lanza:

"... [T]o say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument. ... [W]ithout attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day." (370 U.S. at 143, 82 S.Ct. at 1220.)

The district court denied defendant's motion to suppress, ruling that defendant's Fourth Amendment rights had not been violated by the seizure of the note in that Deputy Coffey had probable cause to believe that defendant was violating a prison regulation against communication among inmates, and was thereby entitled to seize and retain the subject note. (R.T. 171–73).

Appellant urges that the Government failed in its burden of proof to show that, in the absence of a warrant, the seizure of the note was reasonable, and appellant argues that the seizure was therefore violative of the Fourth Amendment. We disagree. We find no infringement of appellant's Fourth Amendment rights.

Appellant at trial asserted this note was not a communication between prisoners, but was intended to be shown by appellant to his prospective visitor from "outside." (That visitor was Viola Dinsio Barber.) But appellant, both in his testimony and in his affidavit filed in support of his Motion to Suppress, admits that he dropped the note onto the floor, that James Dinsio "another inmate ... picked it up and handed it to me." The guard asked for it, gave it back to appellant, and five minutes later again took it back, "claiming he felt it was Dinsio's."

Although appellant stated he had written the note, to ascertain the true fact the trial judge, exercising great care, ordered expert testimony as to (1) who actually wrote or hand printed the note,[12] and (2) what the rules of the jail were.

■ Even if we were to accept appellant's contention that he only was intending to communicate with his visitor, his actions made it appear that there was some communication between himself and another prisoner, and thus, establish probable cause.

In the case of United States v. Hitchcock, 467 F.2d 1107 (9th Cir. 1972), cert. denied, 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973), this Court (using the test of Katz v. United States, 389 U.S. 347 at 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)) held that a prisoner has no reasonable expectation of privacy in his jail cell. We think the appellant in the instant case has an even less well founded claim to an invasion of a reasonable privacy interest in view of the fact that a prison rule forbade communication between prisoners, and the fact that signs in the prison emphasized the rule.

Appellant urges that the jail rules were unreasonable, and relies on United States v. Savage, 482 F.2d 1371, 1373 (9th Cir. 1973), cert. denied, 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1973). In

---

**12.** This order was necessary to insure that the note offered in evidence, had not been written by Dinsio, for had it been, the contents would have been hearsay as to appellant, and inadmissible.

*Savage,* Judge Choy, relying on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), held that the copying of Savage's letter to another convicted felon (confined in another prison) was : *"absent a showing of some justifiable purpose of imprisonment or prison security,"* (482 F.2d at 1373, emphasis added) violative of the Fourth Amendment.

Because no such showing by the Government had been made in the *Savage* case, the court held that while "the letter should have been excluded as evidence"—"the constitutional error was harmless beyond a reasonable doubt." *(Id.)* That this reasoning was controlling is demonstrated by Note 1 in *Savage.* *(Id.)* Here the Government has made a sufficient showing of justifiable purpose in the prison rules and the guard's action.

■ Nor do we find the prison rule against communication at certain times and places between prisoners to be unreasonable. In this day of increased prison violence, the need to regulate prison life has become even more compelling than it previously was. Searches of prisoners' cells (as in *Hitchcock*) may, at times be necessary for the protection of other prisoners as well as to prevent riot or escape; and to similar purpose is the rule here in question.

The relationship between legitimate prison interests and knowing what a prisoner is communicating to someone on the outside is a tangential one. Consequently, this Court in *Savage* held, while such restrictions *may* be necessary in *some* cases to protect legitimate prison interests, they are not obviously so, and therefore require some further showing of justifiable prison purpose. However, the restrictions imposed in the *Hitchcock* case and the instant case are much more compelling, and the nexus between them and justifiable prison interests in maintaining security, much closer than that which faced this Court in *Savage.*

We find the regulation reasonable.

## III. *Self-Incrimination Issue.*

■ Appellant also asserts that the seizure and admission of the note into evidence violates his Fifth Amendment rights, particularly in view of this Court's original decision in VonderAhe v. Howland (9th Cir., March 26, 1973), unofficially published at 31 AFTR2d 73–1075 (1973). That opinion, however, was subsequently withdrawn by that panel and the case reconsidered. It was for this reason that this panel decided to await the final disposition of VonderAhe v. Howland, which was accomplished in VonderAhe v. Howland, 508 F.2d 364 (9th Cir., 1974). Under the "final" *VonderAhe* majority opinion, the court does not reach the Fifth Amendment issue, and therefore, the case can provide little solace to appellant and no support for his contentions.

■ Irrespective of *VonderAhe,* we note that this Court faced a similar issue in United States v. Murray, 492 F.2d 178 (9th Cir. 1973), cert. denied, 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974). We therein held that the admission of evidence lawfully seized from a defendant, even though "testimonial or communicative in nature" does not violate Fifth Amendment guarantees against self-incrimination. The court in *Murray* ruled:

"3. *Seizure of address book.*

Murray argues that the seizure and use in evidence of his address book and entries therein violated his Fifth Amendment privilege against self-incrimination. Murray relies primarily upon an observation by Justice Bradley in Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 29 L.Ed. 746 (1886), to the effect that the seizure of a person's private books and papers to be used in evidence against him is not substantially different from compelling him to be a witness against himself.

*Boyd* involved a self-incrimination problem because the defendant was required by court order to produce a self-incriminating invoice. No such circumstance is present here. Actual-

ly, Murray's address book could have been seized as an instrumentality of the crime under the law as it existed prior to Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), which overturned the 'mere evidence' rule. *Hayden,* of course, liberalized the rule as to what items may be seized.

In *Hayden,* however, the court reserved the question of whether, in a search and seizure otherwise valid, the authorities could, in view of the privilege against self-incrimination, take items which are 'testimonial' or 'communicative' in nature. *See Hayden,* at 302–303, 87 S.Ct. 1642. But in United States v. Bennett, 409 F.2d 888, 896 (2d Cir. 1969), the Second Circuit held that such items can be taken during a lawful search and seizure and are admissible. We agree.

In Blackford v. United States, 247 F.2d 745, 753–754 (9th Cir. 1957), this court held that the privilege against self-incrimination protects one only against testimonial compulsion, and does not apply to real evidence taken from the person of the accused. The Second Circuit held to the same effect in *Bennett. See also,* United States v. Kee Ming Hsu, 424 F.2d 1286, 1290 (2d Cir. 1970). While Murray cites several other authorities in addition to *Boyd,* we find nothing therein which supports his position.

The address books were properly admitted in evidence." (*Id.* at 191.)

In light of this Circuit's decision in *Murray* and owing to the absence of a Fourth Amendment infringement, we do not find the admission of the note into evidence to be violative of appellant's Fifth Amendment right not to be compelled to testify against himself.

Finding no impairment of appellant's constitutional rights in the striking of surplusage from the indictment, or in either the seizure or admission of the note into evidence, and finding no prejudicial error or abuse of discretion in the admission of evidence or in the conduct of the trial to which appellant has called our attention,

we affirm.