**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gordon B. CARLSON,
Defendant-Appellant.**

**No. 79-1341.**

United States Court of Appeals,
Ninth Circuit.

April 4, 1980.

Rehearing Denied June 27, 1980.

---

Gene Huntley, Baker, Mont., for defendant-appellant.

Lorraine Gallinger, Asst. U. S. Atty., Billings, Mont., for plaintiff-appellee.

Before MERRILL, ANDERSON and SCHROEDER, Circuit Judges.

MERRILL, Circuit Judge:

Appellant was convicted of three counts (counts X, XVI and XVII of the grand jury indictment) of misapplying bank funds in violation of 18 U.S.C. § 656.[1] Count X read as follows:

"On or about the 25th day of March, 1976, in the District of Montana, GORDON B. CARLSON, being an officer, that is President of the 1st National Bank of Hinsdale, a member Bank of the Federal Reserve System, with intent to injure and defraud the said 1st National Bank of Hinsdale, did wilfully and knowingly misapply and cause to be misapplied moneys and funds of the said Bank in the amount of $20,000.00 *by fraudulently causing to be disbursed by the said Bank, and converting to his personal use,* monies from a promissory note number 25042 of the 1st National Bank of Hinsdale dated March 25, 1976, in the amount of $21,000.00, *said sum purportedly representing a loan to Roger Blake,* in violation of 18 U.S.C. § 656." (Emphasis added).

Counts XVI and XVII were identical, save as to amount, date and number of the promissory note and name of the purported borrower.

At trial, the government sought to prove that appellant, on these occasions, had purported to make bank loans to the third persons named in the indictment but that the proceeds of those loans had wound up in his own bank account. The government also contended that one of the loans was not adequately secured. Appellant's defense was that he had had no intent to

defraud. He also denied that the one loan was inadequately secured.

Over objection by appellant the district court, in instructing the jury, charged that misapplication may be committed:

"1. By an officer or director of a national bank causing a loan to be made for his own benefit or the benefit of someone other than the purported borrower and concealing his interest or the real party's interest in the loan from the bank;

2. By an officer or director of a national bank causing a loan to be made, knowing that the loan is insufficiently secured and concealing that fact from the bank."

It is contended by appellant that the instruction impermissibly broadened the scope of the indictment to permit conviction of appellant for acts of misapplication other than that for which he was indicted by the grand jury. We agree.

We have no quarrel with the rules of law stated in the challenged instructions and assume, without deciding, that they correctly state the law. The difficulty is that the grand jury, in its indictment, has precisely spelled out the form of misapplication for which it concluded appellant should stand trial: that set forth in paragraph 1 of the quoted instruction. The instructions as given, in adding paragraph 2, permitted the petit jury to find appellant guilty of misapplication of funds based upon misconduct other than that upon which the grand jury based its charge.

That the jury was invited—indeed urged—to find appellant guilty by reason of such misconduct appears from the government's closing statement. It might be added that the government's case of conversion was complex. It required the jury to trace funds through many hands and transactions. The case of lack of security, on the other hand, was comparatively simple. We feel that it is not improbable that on one or more of the counts where guilt was found the jury took the easy road to a verdict.

---

1. That section makes it a crime for an officer, director, agent or employee of any Federal Reserve Bank, member bank, national bank or insured bank to embezzle, abstract, purloin or willfully misapply any money, funds or credits of such bank.

In *Howard v. Daggett*, 526 F.2d 1388 (9th Cir. 1975), appellant was charged with inducing two named women to engage in prostitution and with travelling interstate in furtherance of that activity. This court stated:

"The effect of the supplemental instruction [to the effect that the jury could disregard as surplusage language of the indictment specifying the two named women] was to permit the jury to convict appellant on the basis of evidence introduced at trial regarding women other than the two named in the indictment.

The grand jury might have indicted appellant in a general allegation, without specifying the women to whom his alleged illegal acts or purposes related. But it did not do so. To allow the jury to consider the evidence respecting the other alleged prostitutes was to allow the jury to convict of a charge not brought by the grand jury. The supplemental instruction constituted an impermissible amendment of the indictment that 'destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury.' *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)."

526 F.2d at 1390.

The same is true here.[2]

Reversed and remanded for new trial.

J. BLAINE ANDERSON, Circuit Judge, dissenting:

In my view, no substantial or fundamental right of the defendant has been impaired. I commence by emphasizing that defendant does not contend that he was surprised or misled, either in apprehending the government's proof or in formulating, preparing or presenting his defense. He does not and, indeed, could not claim the risk of double jeopardy. The indictment is clear and precise and, when taken with the evidence adduced at trial, amply protects the defendant from any risk of double punishment. *United States v. Peterson*, 592 F.2d 1035, 1037–38 (9th Cir. 1979), Rule 52(a), Fed.R.Cr.P., 28 U.S.C. § 2111.

The majority opinion takes one instruction out of context, and, by ignoring all of the other instructions which were given to the jury, finds reversible error. If this court chooses to view each instruction in isolation as the majority has done, then it is quite possible that reversible error can now be found in every case where an appeal is taken.

The majority finds that "the instruction impermissibly broadened the scope of the indictment to permit conviction of [Carlson] for acts of misapplication other than that for which he was indicted by the grand jury." Initially, I have no quarrel with the general interpretation of the Fifth Amendment which provides that a court cannot broaden the scope of an indictment so as to allow conviction for matters not covered in the indictment. *See United States v. Dawson*, 516 F.2d 796, 800–804 (9th Cir. 1975), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (contains a thorough discussion of permissible and impermissible amendments). However, this did not occur in the present case. The indictment reasonably advised defendant of the conduct underlying the charge contained in the indictment. It omitted no essential element.

---

**2.** In *United States v. Dawson*, 516 F.2d 796 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975), this court discussed the development in this circuit of the law dealing with amendment of indictments, either directly or by instruction to the jury. We held that the amendment in that case was permissible. The case, however, is distinguishable from the one before us. There, the indictment in a single count charged the defendant with offering money to one with the intent to influence his testimony in two then pending burglary trials.

The district court, following trial, instructed the jury that the conduct of the defendant in connection with one of those cases was removed from its consideration. In holding this amendment permissible, this court stated:

"At most, the judge's instruction merely removed from jury's consideration a charge not supported by the evidence."

516 F.2d at 804. However, the indictment as amended continued to charge a specific crime and it was of that charged crime that defendant was found guilty.

The majority's conclusion that the scope of the indictment was broadened is predicated entirely upon its assumption that the jury could have returned a guilty verdict based on Carlson's *concealment* of certain matters from the bank instead of his *conversion* of the funds to his own use as charged in the indictment. A review of the court's instructions reveals that the majority has mischaracterized what occurred in the present case.

In reviewing the instructions to the jury, several general considerations should be kept in mind. Any error in the charge to the jury must not be viewed in isolation, but in the context of the instructions as a whole. *United States v. Lee*, 589 F.2d 980, 985 (9th Cir. 1979); *United States v. Boekelman*, 594 F.2d 1238, 1240 (9th Cir. 1979). Moreover, the jury is presumed to have followed the court's instructions. *United States v. Strand*, 574 F.2d 993, 996 (9th Cir. 1978).

Prior to its instructions on the specific law applicable to Carlson's case, the district court read the three counts of the indictment to the jury. Each count charged Carlson with the misapplication of "moneys and funds of the said bank . . . by fraudulently causing to be disbursed by said bank, and converting to his personal use . . . ." Reporter's Transcript (R.T.) 325–327. The court then stated that Carlson was "not on trial for any act or conduct not alleged in the indictment." R.T. 327.

This was followed by the court's instruction that the prosecution had to prove, beyond a reasonable doubt, every essential element of the offense under 18 U.S.C. § 656. R.T. 327. The fourth essential element was that Carlson had "willfully *misapplied and converted* to his own use the sums set forth in each count of the indictment." (emphasis added) R.T. 327. It is therefore obvious that the jury had to find that Carlson had not only misapplied the bank's funds, but also converted them to his own use.

After instructing the jury on the elements of the offense, the court proceeded to define certain terms of the § 656 offense.[1] It was at this point that the challenged instruction on misapplication was given. R.T. 328–329. This was merely a definitional instruction. This was followed by the court's instruction explaining *conversion* and how conversion was also a necessary element of the § 656 charge. R.T. 329.

An "intent to injure and defraud" (one of the essential elements) by some plan or scheme to willfully misapply and convert bank funds necessarily and inherently carries the connotation of some element of concealment. Truthful revelation is not fraudulent. It cannot be an impermissible enlargement of the indictment to call this obvious fact to the attention of the jury in a definitional instruction.

And so the instructions as a whole made it abundantly clear that Carlson could not be found guilty unless conversion, as charged in the indictment, was found. There was no way that the jury could have returned a guilty verdict by only finding concealment under the definitional instruction on misapplication as suggested by the majority.

The one case relied upon by the majority, *Howard v. Daggett*, 526 F.2d 1388 (9th Cir. 1975), does not support reversal in the present case. In *Howard*, the indictment had charged the defendant with interstate travel in aid of prostitution with two specifically-named women. The jury was then instructed that it could find the defendant guilty based on evidence regarding women other than the two named in the indictment. This has no application to the present case at all. Every count in the indictment specifically described the single financial transaction upon which it was based. The jury was never told that it could find Carlson guilty based on evidence regarding some other financial transaction than that which was carefully detailed in

---

1. Although the instructions which were given were not perfect, they adequately instructed the jury as to the elements necessary to establish a violation of 18 U.S.C. § 656. *See United States v. Dreitzler*, 577 F.2d 539, 547–549 (9th Cir. 1978); 2 Devitt and Blackmar, Federal Jury Practice and Instructions, 1979 Supp., p. 121, *et seq.*

each count of the indictment. Yet, this is how the majority characterizes the instructions.

In sum, there was no impermissible broadening of the scope of the indictment. The majority's opinion is, I respectfully submit, based on its misconception that the jury could have found only concealment rather than the conversion alleged in the indictment. However, this could not have occurred. A conversion based on concealment was proper. After all, the jury was instructed that the defendant could be convicted based on the acts charged in the indictment which included an allegation of conversion. An essential element of the offense was the "misapplication *and conversion*" of the funds. And, conversion was further explained as a necessary element of the charged offense. In spite of these explicit instructions by the district court, the majority has taken a single definitional instruction out of context and created reversible error.

Surely, we are not going to return to those days when the appellate courts were described as "impregnable citadels of technicality." *Kotteakos v. United States*, 328 U.S. 750, 759, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557, 1563 (1945).

I respectfully dissent.